# EXHIBIT A

EFiled:  Sep 09 2015 04:07PM EDT
Transaction ID 57840998
Case No. 11487-

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| My Size, Inc., | : | |
| | : | |
| Plaintiff, | : | C.A. No.: |
| | : | |
| v. | : | |
| | : | |
| Moshe Mizrahi, Amir Waldman, Israel | : | |
| Healthcare Ventures 2 LP Incorporated, | : | |
| Eitan Nachum, James Shaul, Yoav Matan, | : | |
| Mazal Dahan, Boris Vaynberg, Yotam | : | |
| Zimerman, Noah Sofer, Nir Novak, | : | |
| Northwind Investments, Ltd., Shai | : | |
| Alexandroni, Ben Zion Levi, Yoram Sade, | : | |
| Deadalus Automation BV, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## VERIFIED COMPLAINT

### The Parties

1. Plaintiff, My Size, Inc. ("My Size"), is a Delaware corporation, whose registered agent is Corporation Service Company, located at 2711 Centerville Rd, Suite 400, Wilmington, DE 19808.

2. Defendant, Moshe Mizrahi ("Mizrahi"), is an adult individual residing at 2 Yatzitz St., Tel Aviv, Israel, 6941935.  Mizrahi was a director in My Size from June 2, 2011 and until May 11, 2012.

3. Defendant, Amir Waldman ("Waldman"), is an adult individual residing at 115 Hatzeelon St., Yarkona, Israel 5491500.

4.  Defendant, Israel Healthcare Ventures 2 LP Incorporated ("IHCV") is a corporation organized pursuant to the laws of the country of Israel, whose address is 32 Habarzel St. Ramat Hachayal, Tel Aviv, Israel 6971047.

5.  Defendant, Eitan Nachum ("Nachum") is an adult individual residing at 11 Hana Rubina St., Apt. 15, Tel Aviv, Israel 6937215.

6.  Defendant, James Shaul, ("Shaul"), is an adult individual residing at 134/1 Hasnunit St., Mevaseret Zion, Israel 9078926.

7.  Defendant, Yoav Matan, ("Matan"), is an adult individual residing at 28 Bareket St., Mevaseret Zion, Israel 9078728.

8.  Defendant, Mazal Dahan, ("Dahan"), is an adult individual residing at 23 Zait St., Mazkeret Batya, Israel 7680400.

9.  Mizrahi, Waldman, IHCV, Nachum, Shaul, Matan, and Dahan are collectively referred to herein as the "Metamorfix Shareholders."

10. Defendant, Boris Vaynberg, ("Vaynberg"), is an adult individual residing at 48 Bareket St., Zichron Ya'akov, Israel 3093693.

11. Defendant, Yotam Zimerman, ("Zimerman"), is an adult individual residing at 31 Alon St., Hadera, Israel 3824491.

12. Defendant, Noah Sofer, ("Sofer"), is an adult individual residing at 17 Kehilat Kovna St., Tel Aviv, Israel 6940078.

13.Defendant, Nir Novak, ("Novak"), is an adult individual residing at 3 Hasadot St., Ramat Hasharon, Israel 4704347.

14.Defendant, Northwind Investments, Ltd., ("Northwind"), is a corporation organized pursuant to the laws of the country of Israel, whose address is 32 Habarzel St. Ramat Hachayal, Tel Aviv, Israel 6971047 (c/o Israel Health Care Ventures).

15.Defendant, Shai Alexandroni, ("Alexandroni"), is an adult individual residing at 37 Veidat Katovitz St., Tel Aviv, Israel 6230439.

16.Defendant, Ben Zion Levi, ("Levi"), is an adult individual residing at 142 Habonim St., Moshav Habonim, Israel 30845.

17.Defendant, Yoram Sade, ("Sade"), is an adult individual residing at 4 Tasach, Zichron Ya'akov, Israel 3094659.

18.Defendant, Deadalus Automation BV, ("Deadalus"), is a corporation organized pursuant to the laws of the Netherlands.

**<u>Nature of the Claim</u>**

19.This is an action seeking equitable rescission, monetary damages, the establishment of a constructive trust and injunctive relief to prevent the sale by Defendants of shares of common stock in My Size, which were wrongfully obtained by Defendants.

20. In this civil action, My Size asserts claims of breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, conspiracy to commit fraud, fraud in the inducement, negligent misrepresentation and breach of fiduciary duty arising out of the issuance of shares in Plaintiff, My Size, Inc., to Defendants in a series of transactions.

## Jurisdiction

21. This Court has subject matter jurisdiction over this matter based upon the Court's general equitable power under 10 Del. C. § 341.

22. Plaintiff lacks an adequate remedy at law and therefore seeks to invoke the equitable jurisdiction of this Court.

## Facts Relevant to All Claims

23. My Size is a technology company which is developing technology that allows clothing shoppers to measure themselves and create a unique size ID that will perfectly fit their body for clothing, without the need to physically try on the clothes.

24. My Size reports to the Securities and Exchange Commission (the "SEC") and its shares are currently being traded on the Tel Aviv Stock Exchange in Israel.

25. Metamorfix, Ltd. (hereinafter "Metamorfix") was a company engaged in the examination and research and development of technologies to facilitate the healing, rejuvenation and repair of skin tissues.

4

*First Metamorfix Transaction – June 15, 2011*

26.On June 5, 2011, My Size entered into an agreement with Israel Healthcare Ventures 2 LP Incorporated ("IHCV"), pursuant to which IHCV transferred all of its equity interest in Metamorfix, consisting of 1.4 million ordinary shares.  As a result of this transaction (hereinafter referred to as the "First Metamorfix Transaction"), My Size acquired 19.35% of the issued and outstanding shares of Metamorfix.

27.In conjunction with the First Metamorfix Transaction, a valuation study of Metamorfix was conducted by Variance Economic Consulting.  That study is referenced hereinafter as the "Variance Report."

*Medgenesis Transaction – June 30, 2011*

28.Concurrently with the First Metamorfix Transaction, on June 30, 2011, My Size's largest shareholder at the time, Medgenesis Partners, Ltd., entered into a transaction with IHCV, known as the "Medgenesis Transaction."

29.Pursuant to the terms of the Medgenesis Transaction, Medgenesis transferred 1,095,295 shares of My Size common stock to IHCV.  The purpose of this transaction was to increase My Size's shareholders' equity in order to enable My Size to resume trading on the Tel Aviv Stock Exchange on an unrestricted basis.

*Second Metamorfix Transaction – November 17, 2011*

30. On November 17, 2011, My Size entered into a share for share stock transaction with the Metamorfix Shareholders.

31. The details of this transaction, hereafter referred to as the "Second Metamorfix Transaction," were as follows: My Size and the other shareholders of Metamorfix entered into an equity purchase agreement, whereby a subsidiary of My Size would purchase 5,725,000 shares of Metamorfix (the remaining 80.65%), in exchange for:

    i.   The issuance of an aggregate of 8,009,009 shares of My Size common stock to the shareholders of Metamorfix;

    ii.   The cancellation of all outstanding options to purchase shares of Metamorfix;

    iii.   The receipt of IHCV of an additional 859,889 shares of My Size in consideration for the conversion of loans that were owed to IHCV by Metamorfix;

    iv.   The grant of options to purchase 363,378 shares of My Size to the former option holders of Metamorfix.

32. At the time of the Second Metamorfix Transaction, My Size was a publicly traded company on the Tel Aviv Stock Exchange in Israel, trading at

approximately 3.00 New Israeli Sheqels ("NIS") per share (just under $1.00 per share). At such time, My Size was reporting to the SEC.

33. Accordingly, under the Second Metamorfix Transaction, the Metamorfix Shareholders were issued 8,868,989 shares of My Size.

34. My Size had been led to believe that Metamorfix was worth $14.4 million.

35. On August 24, 2011, My Size filed and circulated a proxy for shareholders to approve the Second Metamorfix Transaction.

36. The Second Metamorfix Transaction was approved, as required by law, by the My Size shareholders in November 29, 2011.

37. The Second Metamorfix Transaction was consummated on December 29, 2011 and as a result, My Size became the sole shareholder of Metamorfix.

*Variance Report, ISA Report and Obligations of the Metamorfix Shareholders*

38. The aforementioned Variance Report was publicly filed with the Israeli Stock Authority ("ISA"), along with the My Size shareholder proxy, on October 24, 2011 (the "ISA Report") and served as an integral part of the official notice to the shareholders of My Size for their approval of the Second Metamorfix Transaction.

39. The ISA Report approved the proxy, with the following "sanctions":

> 2.5.2    The consideration in shares was determined in the course of negotiations conducted between the company and Mr. Asher Shmulevitch and the shareholders of Metamorefix, and based on a valuation of Metamorefix which was transferred to the controlling shareholders of the

8

company and which is attached to this report.

2.6        Conditions Precedent

The consummation of the transaction being the subject matter of this report is subordinated to the fulfillment of the following conditions:

      a.        The correctness of the representations which were given by the company and the Offerees.

2.11       Summary of the reasons given by the Audit Committee and the Board of Directors for the approval of the transaction:

The following are the reasons of the Audit Committee and the Board of Directors from September 12, 2011 and October 23, 2011:

a.        The allotment transaction is crucial for the continuation of the company's activity in view of the fact that on the date of publication of this report the company has no business activity. The undertaking of Metamorefix' activity by the company and future fund raising for the company for the expansion of its operations will upgrade the company and benefit its shareholders.

b.        The company's engagement in the allotment agreement and attainment of full control over Metamorefix will assist the company in the presentation of its activity before bodies in the capital market for future fund raising which is essential for the continued development of the company's business.

c.        The tender of a loan convertible into shares by shareholders of Metamorefix and others, will assist to strengthen the company's capital structure and will assist it to fulfill its obligations.

d.        The Audit Committee and the Board of Directors are of the opinion that the consideration for the Offered Shares, which is based on a valuation of Metamorefix which was prepared by an independent assessor, is fair and reasonable in view of the circumstances and the financial condition of the company.

40. The ISA Report, including the Variance Report, was a public document, and was relied upon by My Size shareholders in approving the Second Metamorfix Transaction.

41. The public and later investors relied upon the information contained in the ISA Report and the Variance Report when purchasing stock in My Size.

42. The Variance Report represented the value of Metamorfix to be $14.4 million.

43. The $14.4 million valuation of Metamorfix was based upon the commitment to the ISA and to My Size by two Metamorfix shareholders, Moshe Mizrahi ("Mizrahi") and Amir Waldman ("Waldman"), that:

    i.   If they raised money for Metamorfix from external investors to carry out its business plan through June 30, 2012, that **such fundraising would be done at a valuation of $14.4 million.**

    ii.   That the cash requirement of Metamorfix for the period ending on June 30, 2012 was 5.775 million NIS (approximately $1,500,000.00), and **that if they failed to raise outside money, that they themselves would fund Metamorfix in the amount of 5.775 million NIS**.

44. The Second Metamorfix Transaction and specifically, the issuance of My Size shares to the Metamorfix Shareholders, was based upon, subject to and conditioned upon the $14.4 million valuation of Metamorfix as represented in the

Variance Report, as well as the undertakings and representations made by the Metamorfix Shareholders therein, including but not limited to the commitment to fund.

45. The Metamorfix Shareholders were all aware and had full knowledge of the fact that the approval of the Second Metamorfix Transaction by the shareholders of My Size, and the issuance of shares to the Metamorfix Shareholders pursuant to the Second Metamorfix Transaction was based upon the figures in the Variance Report and the aforementioned commitments of Mizrahi and Waldman to My Size and the ISA.

### *Intentional and Fraudulent Misconduct by Mizrahi, Waldman and the Metamorfix Shareholders*

46. The Metamorfix Shareholders, specifically Mizrahi and Waldman, **did not** raise the money from outside investors as they had committed to do. The little money that they did raise was raised at an improperly low valuation, in breach of their contractual commitments to My Size under the Second Metamorfix Transaction.

47. Second, the Metamorfix Shareholders, specifically Mizrahi and Waldman, have never transferred 5.775 million NIS to Metamorfix, in breach of their contractual commitments under the Second Metamorfix Transaction.

48. My Size and its auditors have repeatedly requested that the Metamorfix Shareholders demonstrate or provide any documentation to show that they made

the capital infusion as they committed to do.  The requested information has never been provided.

49. The aforementioned breaches by the Metamorfix Shareholders rendered the Metamorfix shares that had been purchased by My Size utterly worthless, causing damage to both My Size and the public investors who had purchased shares in My Size, in reliance on Defendants' representations.

50. In December 2011, merely one week after the approval of the Second Metamorfix Transaction, the Metamorfix Shareholders offered an investment in Metamorfix to a group of investors for a total amount of 1,230,000.00 NIS (approximately $300,000.00), at a valuation of 20,000,000.00 NIS (approx. $5,000,000.00), **33% of the $14.4 million valuation** which was mandated and required under the Second Metamorfix Transaction.  These investors were Boris Vaynberg, Yotam Zimerman, Noah Sofer, Nir Novak, Northwind Investments Ltd. Shai Alexandroni, Ben Zion Levi, Yoram Sade and Deadalus Automation BV (collectively referred to herein as the "Novak Group").

51. Section 2.8 of the investment agreement between the Novak Group and My Size specified that the Novak Group acknowledged and were aware of the limitations set forth in the ISA report with respect to their investment. Such Section 2.8 reads

".... Other than as specified in **Exhibit A**, and in the outline of the Metamorefix transaction with respect of which an immediate report was made on October 24,

2011 [the ISA Report] (the "**Metamorefix Transaction**"), the Company has no obligation towards any person to issue Company securities or make any transaction in its securities."

52. The Metamorfix Shareholders were fully aware of the breaches of contract under the Second Metamorfix Transaction and never once did any of the Metamorfix Shareholders notify My Size, the investor public, the ISA or the SEC of these breaches.

53. Additionally, IHCV was fully aware of the fact that Mizrahi and Waldman did not perform their obligations.   Furthermore IHCV was aware that the public, and later investors had relied on the undertakings of Mizrahi and Waldman when investing in My Size and never once did IHCV notify My Size, the investor public, the ISA or the SEC of these breaches.

54. IHCV's silence was coordinated due to the longstanding relationship between IHCV and the Metamorfix Shareholders, which includes joint involvement in over 15 companies including Home Skinovation Ltd. (where Mizrahi is CEO, Waldman is Vice President, and IHCV is a shareholder) and Syneron, Inc. (where Mizrahi was CEO and IHCV was a shareholder).

55. Prior to the consummation of the Second Metamorfix Transaction, as of January 17, 2012, the market value of My Size was 49 million NIS (approximately $12,800,000.00).

56. As a direct and proximate result of the Second Metamorfix Transaction, the refusal of Defendants to meet their obligations thereunder, and the contractual breaches and tortious conduct detailed herein, the value of My Size's investment in Metamorfix dissipated completely and the value of My Size was severely damaged as a result, causing My Size to lose nearly all of its value. Notably, in September 2013, the controlling shareholder of My Size, Mr. Asher Shmulevitch, sold his 40% stake in My Size for 150,000.00 NIS (approximately $37,500.00).

57. The Second Metamorfix Transaction was a conspiracy and a plan perpetrated by the Metamorfix Shareholders and the Novak Group to defraud My Size and to induce My Size and its shareholders to enter into the Second Metamorfix Transaction, whereby My Size would purchase Metamorfix at an inflated valuation, which was based upon commitments that Mizrahi and Waldman and the rest of the Metamorfix Shareholders never intended to honor.

58. As compelling evidence of the conspiracy and in furtherance of the conspiracy, Mizrahi and Waldman offered Metamorfix shares at 33% of the promised value to the Novak Group barely *one week* after the consummation of the Second Metamorfix Transaction.

59. The Novak Group **was fully aware** of the limitations set forth in the ISA report with respect to the valuation at which the Metamorfix Shareholders were permitted to raise funds.

60.The Metamorfix Shareholders and the Novak Group conspired to induce My Size to enter into the Metamorfix Transaction, knowing that Metamorfix and its shares were virtually worthless, and did so in order to obtain shares of My Size and benefit from the value of My Size.

61.Had the Novak Group not been involved in the conspiracy, they would have (1) demanded that the Metamorfix shareholders fund Metamorfix as they had pledged to do, and (2) pursued or at least threatened legal action against the Metamorfix Shareholders for not funding Metamorfix as they were obligated to do. Rather, the Novak Group now stands side by side with the Metamorfix Shareholders in the final step of the scheme, which is to sell their shares in My Size.

62.The Variance Report was a critical piece of the scam perpetrated by the Metamorfix Shareholders and the Novak Group and was utilized by the Metamorfix Shareholders and the Novak Group to induce My Size into entering into the Second Metamorfix Transaction and to issue shares of My Size.

63.At all times material hereto, Mizrahi served as a director of My Size **and** Metamorfix.  Mizrahi was a director of My Size during the approval of the Metamorfix transaction and was instrumentally active in its approval.

*Mizrahi deliberately concealed from the SEC*
*the obligation to fund Metamorfix.*

64. Beginning in September 29, 2011, the SEC issued several comment letters to My Size questioning the First Metamorfix Transaction.  The SEC further issued several comments regarding the Form 8-k which My Size filed on January 5, 2012 with the SEC with respect to the Second Metamorfix Transaction.

65. On December 5, 2011, Mizrahi acting in his capacity as director of My Size, caused My Size to send a letter to the SEC, reporting to the SEC that My Size had relied on the Variance Report to determine the value of Metamorfix.  In this letter, Mizrahi deliberately concealed his and Waldman's commitment to fund Metamorfix with 5.775 million NIS (approx. $1,500,000.00), which was a critical aspect of the valuation contained in the Variance Report.

66. Furthermore, even though the Variance Report was referenced as a determining factor in calculating the value of Metamorfix, Mizrahi did not file the Variance Report, nor did he disclose to the SEC his and Waldman's obligation to fund Metamorfix, thereby deliberately misrepresenting the contents of the Variance Report to the SEC, particularly the obligation to fund Metamorfix.

67. Mizrahi, in his capacity as a director of My Size, deliberately did not disclose to the SEC the obligation to fund Metamorfix.  Mizrahi had the opportunity and obligation throughout his tenure as a director of My Size to make these required disclosures to the SEC, yet he refused and neglected to do so, despite his fiduciary duties and obligations.

68.Finally, after several additional inquiries from the SEC, many of which went unanswered, on July 25, 2012, My Size sent the following correspondence to the SEC:

> **"The Company is experiencing a difficult period of financial struggles was unable to answer your Comment Letters. The Company takes its US Filings very seriously, but due to its lack of resources is currently unable to properly respond to your queries. The Company is currently reviewing its different venues of actions, whether finding additional investors or shutting down its operations."**

69.The SEC never approved the form 8-k filed by My Size.

### *My Size Sells Its Shares of Metamorfix*

70. On January 18, 2013, approximately one year after the consummation of the Second Metamorfix Transaction, a United States company, Metasol, LLC ("Metasol"), purchased all of the Metamorfix shares which had been held by My Size, in exchange for the following ("Metasol Transaction"):

  i. A total of $100,000.00 in cash, paid to My Size prior to closing;

  ii. A total of $110,000.00 in cash, which was paid to My Size on the date of closing;

  iii. Metasol incurring the liabilities of Metamorfix, as calculated on the date of the completion of the Metasol Transaction, not to exceed $300,000.00.

71. Metasol never paid the $300,000.00, upon realization that the shares in Metamorfix were utterly worthless and that Metamorfix was a sham company.

72. Virtually all of the records that were in the possession of My Size regarding the First and Second Metamorfix Transactions have been destroyed, leaving My Size's current management to attempt to piece together what took place.

### *Metamorfix Shareholders Seek to Sell Their Shares In My Size*

73. The Metamorfix Shareholders planned and orchestrated a deliberate and elaborate scheme to rid themselves of shares of Metamorfix, which they had and knew were worthless, onto the public, by undertaking obligation they had no

intention of meeting, in order to obtain shares in My Size and generate millions of dollars of profit, at the expense of the investing public, who would lose all their money as a result.

74. As part of the final step in their scheme to defraud My Size, the Metamorfix Shareholders have requested, through counsel, to My Size that My Size remove the restricted legends on their shares in My Size to allow them to sell their shares in My Size on the Tel Aviv Stock Exchange.

75. By attempting to sell their shares in My Size, the Metamorfix Shareholders seek to now profit from their elaborate scheme, at the expense of and to the detriment of both My Size and the public investors who were victims of their plan.

76. In response, My Size has requested documentation from those Metamorfix Shareholders to verify proof of the payment for the shares.

77. To date, the requested documentation has not been provided.

<u>**Count I –Breach of Contract**</u>

*(Based Upon Failure of Condition Precedent - Failure to Fund)*

78. Plaintiff re-alleges all of the foregoing paragraphs as it fully set forth herein.

79. The documents underlying the Second Metamorfix Transaction were a binding contract.

80. The Second Metamorfix Transaction and specifically, the issuance of My Size shares to the Metamorfix Shareholders, was based upon and subject to the

19

valuation of Metamorfix as contained in the Variance Report, as well as the undertakings and representations made by the Metamorfix Shareholders therein.

81. Mizrahi and Waldman represented to the ISA, and to the public that the cash requirement of Metamorfix for the period ending on June 30, 2012 was 5.775 million NIS (approximately $1,750,000.00) and that if they failed to raise outside money, that they themselves would fund Metamorfix.

82. Defendants, Mizrahi and Waldman failed to transfer the 5.775 million NIS to Metamorfix, a condition precedent to the transfer of the My Size shares and in breach of their commitments under the Second Metamorfix Transaction.

83. As a direct result of Defendants' breach and failure to satisfy the condition precedent, My Size has suffered damages in the shares transferred to Defendants, which continue to be wrongfully held by Defendants.

84. As a result of the aforementioned conduct, My Size has no adequate remedy at law and requests equitable rescission and a judicial declaration that the Second Metamorfix Transaction is rescinded, *void ab initio* and that the shares of My Size issued to the Metamorfix Shareholders and the Novak Group thereunder are returned to My Size, returning the parties to the status quo ante.  In the alternative, to the extent that this Court finds that a remedy at law is an adequate remedy, My Size requests that the Court enter an award for all damages suffered by My Size as a result of Defendants' conduct.

## Count II – Breach of Contract

*(Based Upon Solicitation of Investments at Lower Valuation)*

85. Plaintiff re-alleges all of the foregoing paragraphs as it fully set forth herein.

86. The documents underlying the Second Metamorfix Transaction were a binding contract.

87. The Second Metamorfix Transaction and specifically, the issuance of My Size shares to the Metamorfix Shareholders, was based upon and subject to the valuation of Metamorfix as contained in the Variance Report, as well as the undertakings and representations made by the Metamorfix Shareholders therein.

88. Mizrahi and Waldman represented to the ISA, and the public, that the cash requirement of Metamorfix for the period ending on June 30, 2012 was 5.775 million NIS (approximately $1,500,000.00), and that if they failed to raise outside money, that they themselves would fund Metamorfix.

89. If Mizrahi and Waldman were to raise money for Metamorfix from external investors to carry out its business plan through June 30, 2012, they were contractually obligated to raise those investments at a valuation of $14.4 million.

90. In breach of their obligations under the Second Metamorfix Transaction, in December 2011, Mizrahi and Waldman offered an investment in Metamorfix to the Novak Group of 1,230,000.00 NIS (approximately $300,000.00), at a valuation of 20,000,000.00 NIS (approx. $5,000,000.00), **a mere 33% of the $14.4 million**

**valuation** which was mandated and required under the Second Metamorfix Transaction.

91. As a direct result of Defendants' breach, My Size has suffered damages in the shares transferred to Defendants, which continue to be wrongfully held by Defendants.

92. As a result of the aforementioned conduct, My Size has no adequate remedy at law and requests equitable rescission and a judicial declaration that the Second Metamorfix Transaction is rescinded, *void ab initio* and that the shares of My Size issued to the Metamorfix Shareholders and the Novak Group thereunder are returned to My Size, returning the parties to the status quo ante.  In the alternative, to the extent that this Court finds that a remedy at law is an adequate remedy, My Size requests that the Court enter an award for all damages suffered by My Size as a result of Defendants' conduct.

## <u>Count III – Breach of Implied Covenant of Good Faith and Fair Dealing</u>

93. Plaintiff re-alleges all of the foregoing paragraphs as it fully set forth herein.

94. Defendants owed My Size an implied duty of good faith and fair dealing with regard to their conduct under the First and Second Metamorfix Transactions.

95. Defendants were bound by their promises pursuant to the First and Second Metamorfix Transactions, pursuant to the clear terms of the agreements as detailed herein.

96. Despite that knowledge, Defendants have knowingly and blatantly disregarded their clear obligations to My Size pursuant to the Second Metamorfix Transaction.

97. Defendants breached their duty to act in good faith with respect to their contractual duties to My Size.

98. Defendants have acted unreasonably and in bad faith and deprived My Size of the benefit of the bargain by refusing to perform their obligations to My Size.

99. As a result of the aforementioned conduct, My Size has no adequate remedy at law and requests equitable rescission and a judicial declaration that the Second Metamorfix Transaction is rescinded, *void ab initio* and that the shares of My Size issued to the Metamorfix Shareholders and the Novak Group thereunder are returned to My Size, returning the parties to the status quo ante.  In the alternative, to the extent that this Court finds that a remedy at law is an adequate remedy, My Size requests that the Court enter an award for all damages suffered by My Size as a result of Defendants' conduct.

## Count IV – Unjust Enrichment

100. Plaintiff re-alleges all of the foregoing paragraphs as it fully set forth herein.

101. As a result of the conduct described herein, Defendants have been unjustly enriched at the expense of My Size.

102.    As a result of the aforementioned conduct, My Size has no adequate remedy at law and requests equitable rescission and a judicial declaration that the Second Metamorfix Transaction is rescinded, *void ab initio* and that the shares of My Size issued to the Metamorfix Shareholders and the Novak Group thereunder are returned to My Size, returning the parties to the status quo ante.

103.    Upon information and belief, at least one of the Metamorfix Shareholders have already sold their shares in My Size to third parties.

104.    My Size further requests that the Court require any Defendant who has already sold, encumbered or otherwise alienated their shares in My Size to disgorge all monies, profits and gains which they have or will unjustly obtain in the future at the expense of My Size.

## Count V – Conspiracy to Commit Fraud

105.    Plaintiff re-alleges all of the foregoing paragraphs as it fully set forth herein.

106.    Defendants are parties to a civil conspiracy.

107.    Defendants conspired to misrepresent the value of Metamorfix to My Size in a series of deceptions and misrepresentations, in order to induce My Size to enter into the Second Metamorfix Transaction.

108.     Defendants committed an overt act in furtherance of their conspiracy, including providing the Variance Report and information related to the Second Metamorfix Transaction, causing My Size to suffer damage.

109.     As a result of the aforementioned conduct, My Size has no adequate remedy at law and requests equitable rescission and a judicial declaration that the Second Metamorfix Transaction is rescinded, *void ab initio* and that the shares of My Size issued to the Metamorfix Shareholders and the Novak Group thereunder are returned to My Size, returning the parties to the status quo ante.   In the alternative, to the extent that this Court finds that a remedy at law is an adequate remedy, My Size requests that the Court enter an award for all damages suffered by My Size as a result of Defendants' conduct.

## Count VI – Fraud In the Inducement

110.     Plaintiff re-alleges all of the foregoing paragraphs as it fully set forth herein.

111.     Defendants knew at the time they made the false representations and concealed the true financial condition of Metamorfix that such representations were untrue and that Defendants were concealing material facts from My Size.

112.     Defendants acted with the intention to deceive and mislead My Size and to fraudulently induce My Size to sell stock to them in connection with the

Second Metamorfix Transaction in exchange for Metamorfix stock, which they knew to be worthless.

113.     My Size acted in reliance upon Defendants' false representations and material omissions and was thereby induced to agree to the Second Metamorfix Transaction.

114.     As a direct and proximate result thereof, My Size was damaged.

115.     As a result of the aforementioned conduct, My Size has no adequate remedy at law and requests equitable rescission and a judicial declaration that the Second Metamorfix Transaction is rescinded, *void ab initio* and that the shares of My Size issued to the Metamorfix Shareholders and the Novak Group thereunder are returned to My Size, returning the parties to the status quo ante.   In the alternative, to the extent that this Court finds that a remedy at law is an adequate remedy, My Size requests that the Court enter an award for all damages suffered by My Size as a result of Defendants' conduct.

## <u>Count VII – Negligent Misrepresentation</u>

116.     Plaintiff re-alleges all of the foregoing paragraphs as it fully set forth herein.

117.     If the false statements or omissions set forth above were not made with knowledge or recklessness as to their falsity, then they were made negligently, or without due care, by Defendants.

118.     Defendants supplied the financial information regarding Metamorfix set forth above to My Size in the course of their business and failed to exercise due care and competence in obtaining and communicating the information, which My Size was reasonably justified in expecting.

119.     Defendants knew that My Size would reasonably rely on Defendants' representations, and Defendants intended to influence and induce action on the part of My Size through those representations.

120.     My Size and the investor public were, in fact, deceived by Defendants' misrepresentations and omissions and reasonably and justifiably relied to its detriment on those misrepresentations and omissions.

121.     Defendants' misrepresentations and/or omissions regarding Metamorfix were false and misleading at the time they were made.

122.     My Size reasonably relied upon those misrepresentations and/or omissions to its detriment and entered into the Second Metamorfix Transaction.

123.     The issuance of the shares of My Size to Defendants as part of the Second Metamorfix Transaction was the product of negligent misrepresentations made by Defendants.

124.     As a direct and proximate result of Defendants' misrepresentations and omissions, My Size entered into the Second Metamorfix Transaction and was damaged.  My Size would have never entered into this transaction if My Size had

not been provided with the aforementioned false information regarding Metamorfix.

125.     As a result of the aforementioned conduct, My Size has no adequate remedy at law and requests equitable rescission and a judicial declaration that the Second Metamorfix Transaction is rescinded, *void ab initio* and that the shares of My Size issued to the Metamorfix Shareholders and the Novak Group thereunder are returned to My Size, returning the parties to the status quo ante.   In the alternative, to the extent that this Court finds that a remedy at law is an adequate remedy, My Size requests that the Court enter an award for all damages suffered by My Size as a result of Defendants' conduct.

## Count VIII – Breach of Fiduciary Duties

126.     Plaintiff re-alleges all of the foregoing paragraphs as it fully set forth herein.

127.     Mizrahi was a director of My Size from June 2, 2011 and until May 11, 2012.

128.     In his capacity as a director of My Size, there was a relationship of dependence and influence between Mizrahi and My Size.

129.     Mizrahi owed a fiduciary duty to My Size to act with the utmost good faith, honesty and loyalty, and not to favor his own interests at the expense of My Size.

130.    By his foregoing conduct in conjunction with the Second Metamorfix Transaction, Mizrahi willingly and fraudulently breached his fiduciary duties to My Size by making material misrepresentations and omissions and by failing to disclose material facts regarding the status of Metamorfix and by placing his own interests ahead of the interests of My Size.

131.    By his failure to respond to several SEC inquiries regarding the transactions at issue, Mizrahi willingly and fraudulently breached his fiduciary duties to My Size by refusing to disclose material facts regarding the status of My Size's investment in Metamorfix and his own wrongful conduct to the SEC and by placing his own interests ahead of the interests of My Size.

132.    As a direct and proximate result of Mizrahi's breach of his fiduciary duties to My Size, My Size has been damaged.

### Count IX – Constructive Trust and Injunctive Relief

133.    Plaintiff re-alleges all of the foregoing paragraphs as it fully set forth herein.

134.    Defendants wrongfully obtained possession of the My Size shares by virtue of their fraudulent, unfair and unconscionable conduct.

135.    Defendants have been unjustly enriched at the expense of My Size as a result of their fraudulent, unfair and unconscionable conduct.

136.   My Size is the equitable owner of the My Size shares held by Defendants.

137.   My Size requests that this Court establish a constructive trust over the My Size shares held by Defendants, pending resolution of the issues and claims set forth herein.

138.   If Defendants are permitted to complete their premeditated plan and sell their shares in My Size, such action would result in irreparable harm to My Size, for which there is no adequate remedy at law.

139.   Accordingly, in conjunction with the establishment of the constructive trust, My Size further requests that the Court enter an injunction, restraining Defendants from selling or otherwise alienating any of their shares in My Size on the Tel Aviv Stock Exchange, or on any exchange, pending a resolution of the claims set forth herein.

**WHEREFORE**, Plaintiff, My Size, requests that this Court enter judgment awarding the following relief:

i.   Equitable rescission and a judicial declaration that the Second Metamorfix Transaction is rescinded, *void ab initio* and that the shares of My Size issued to the Metamorfix Shareholders and the Novak Group thereunder are returned to My Size, returning the parties to the status quo ante.

ii.    Costs associated with effecting rescission;

iii.    In the alternative, to the extent that this Court finds that a remedy at law is an adequate remedy, My Size requests that the Court enter an award for all damages and losses suffered by My Size as a result of Defendants' conduct;

iv.    Disgorgement of all monies, profits and gains unjustly realized or that may be realized as a result of Defendants' conduct;

v.    Costs and attorneys' fees in connection with this action;

vi.    Establishment of a constructive trust over Defendants' shares in My Size, pending a resolution of the issues and claims articulated herein;

vii.    Entry of an injunction, restraining Defendants from selling any of their shares in My Size, pending a resolution of the claims articulated herein;

viii.    Such further relief as the Court may deem just and equitable.

**GARIBIAN LAW OFFICES, P.C.**

By: /s/ Antranig N. Garibian
Antranig N. Garibian, Esquire, Bar No. 4962
1010 N. Bancroft Parkway, Suite 22
Wilmington, DE 19805
(302) 722-6885 – o
(302) 888-2923 – f
ag@garibianlaw.com
*Attorney for Plaintiff, My Size, Inc.*

31