# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MY SIZE, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 15-1061-SLR |
| | ) |
| MOSHE MIZRAHI, AMIR WALDMAN, | ) |
| ISRAEL HEALTHCARE VENTURES 2 | ) |
| LP INCORPORATED, EITAN NACHUM | ) |
| JAMES SHAUL, YOAV MATAN, | ) |
| MAZAL DAHAN, BORIS VAYNBERG, | ) |
| YOTAM ZIMERMAN, NOAH SOFER, | ) |
| NIR NOVAK, NORTHWIND | ) |
| INVESTMENTS, LTD., SHAI | ) |
| ALEXANDRONI, BEN ZION LEVI, | ) |
| YORAM SADE, AND DEADALUS | ) |
| AUTOMATION BV, | ) |
| | ) |
| Defendants. | ) |

Antranig N. Garibian, Esquire of Garibian Law Offices, P.C., Wilmington, Delaware Counsel for Plaintiff.

Michael A. Weidinger, Esquire, and Alessandra Cristina Phillips, Esquire of Pinckney, Weidinger, Urban and Joyce, L.L.C., Wilmington, Delaware. Of Counsel: Howard I. Rhine, Esquire, and David Sack, Esquire of Feder Kasovitz L.L.P.. Counsel for Defendants.

## MEMORANDUM OPINION

Dated: June 15, 2016
Wilmington, Delaware

**ROBINSON, District Judge**

## I. INTRODUCTION

My Size Inc. ("plaintiff") filed a verified complaint on September 9, 2015 in the Court of Chancery in the State of Delaware against defendants Moshe Mizrahi ("Mizrahi"), Amir Waldman ("Waldman"), Israel Healthcare Ventures 2 LP Incorporated ("IHCV"), Eitan Nachum ("Nachum"), James Shaul ("Shaul"), Yoav Matan ("Matan"), Mazal Dahan ("Dahan"), Boris Vaynberg ("Vaynberg"), Yotam Zimerman ("Zimerman"), Noah Sofer ("Sofer"), Nir Novak ("Novak"), Shai Alexandroni ("Alexandroni"), Ben Zion Levi ("Levi"), and Yoram Sade ("Sade") (collectively, "defendants"). (D.I. 1 at 3) On November 16, 2015, defendants removed the action to this court. (*Id.*) Presently before the court is defendants' motion to dismiss for lack of personal jurisdiction, improper venue, *forum non conveniens*, and for failure to state a claim pursuant to Rules 12(b)(2), (3), (6) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1406(a).[1] (D.I. 6) This court has jurisdiction pursuant to 28 U.S.C. §§ 1441(a) and 1446.

## II. BACKGROUND

Plaintiff is a corporation, organized and existing under the laws of the State of Delaware, whose shares are traded exclusively on the Tel Aviv Stock Exchange in Israel. (D.I. 1, ex. A at ¶¶ 1, 24) Defendants are a collection of individuals and companies who bought and traded shares of My Size and Metamorefix Ltd. ("Metamorefix").[2] (*Id.* at 1-3) Defendant Mizrahi is the former director of My Size Inc.,

---

[1] Defendants do not address their 12(b)(6) motion for plaintiff's alleged failure to state a claim upon which relief can be granted.

[2] Northwind Investments Ltd. and Deadalus Automation BV were listed in the verified complaint as defendants. (D.I. 1 at ¶¶ 14, 18) However, defendants' notice of removal states that neither company was served with copies of the initial pleadings.

and resides in Israel. (Id. at ¶ 2)  Defendant IHCV is a corporation incorporated in Israel.[3] (Id. at ¶ 4)  Defendants Waldman, Nachum, Shaul, Matan, Dahan, Vaynberg, Zimerman, Sofer, Novak, Alexandroni, Levi, and Sade are all individuals residing in Israel. (Id. at ¶¶ 3, 5-13, 15-17)

      This litigation centers around a set of transactions that started on June 5, 2011 with defendant IHCV acquiring shares of Metamorefix, a company developing technology to repair skin tissue. (D.I. 11 at 2)  A second transaction occurred on June 30, 2011, when plaintiff's largest shareholder, Medgenesis Partners Ltd., transferred 1,095,295 shares of My Size stock to IHCV. (Id.)  In the third and final transaction, plaintiff traded 8,009,009 shares of My Size to defendants Mizrahi, Waldman, IHCV, Nachum, Shaul, Matan, and Dahan (collectively the "Metamorefix shareholders"), and 859,889 shares of My Size to defendant IHCV, in exchange for 5,725,000 shares of Metamorefix ("the Contract"). (Id.)

      The Contract is written in Hebrew, was negotiated and executed in Israel, and contains a forum selection clause. (D.I. 7 at 3)  Plaintiff alleges that the translated clause reads:  "The law **which applies** to this agreement is the law of the State of Israel and the place of jurisdiction for the purpose of a jurisdiction clause is the courts of the district of Tel Aviv-Jaffa." (D.I. 11 at 14) (emphasis added)  On the other hand, defendants contend that the translated clause reads:  "The law **that shall** govern this agreement is the law of the State of Israel and the place of jurisdiction for the purpose of

---

[3] The complaint does not allege that defendant IHCV has a place of business in Delaware or even does business in Delaware. (Id. at 1-3)  The court will treat IHCV's principal place of business as Israel.

a jurisdiction clause is the courts of the district of Tel Aviv-Jaffa District." (D.I. 7 at 7) (emphasis added)

Plaintiff alleges that the Contract contains conditions whereby defendants Mizrahi and Waldman promised that they would either raise money for Metamorefix or fund the company with their own capital, but this promise was never fulfilled. (D.I. 11 at 4-5) Instead, Mizrahi, Waldman, and the rest of the Metamorefix shareholders offered an investment in Metamorefix to defendants Vaynberg, Zimerman, Sofer, Novak, Northwind Investments Ltd., Alexandroni, Levi, Sade and Deadalus Automation BV (collectively the "Novak Group") at a price much lower than the required valuation. (*Id.* at 5) As a result, My Size has lost nearly all of its own value. (*Id.* at 6) In sum, plaintiff alleges that defendants acted tortiously and fraudulently to generate profits for themselves. (*Id.* at 7)

Defendants are currently unable to trade their shares of My Size because of restrictive legends placed on the shares. (D.I. 7 at 5) A suit was filed on September 9, 2015 in the district court of Tel Aviv, Israel, to remove said legends, wherein plaintiff has asserted counterclaims resembling the claims in this action. (*Id.* at 6) An initial preliminary hearing was held on January 11, 2016, and a second preliminary hearing was held on March 22, 2016. Judge Chaled Kabub has ordered mutual discovery of documents and responses to written questionnaires. (D.I. 12 at 8) On March 27, 2016, My Size's motion to grant partial verdict was denied. (*Id.*) A trial date for the Israeli suit is set for July 17, 2016. (*Id.*)

## III. STANDARDS OF REVIEW

### A. Personal Jurisdiction

3

Rule 12(b)(2) of the Federal Rules of Civil Procedure directs the court to dismiss a case when the court lacks personal jurisdiction over defendant. Fed. R. Civ. P. 12(b)(2). When reviewing a motion to dismiss pursuant to Rule 12(b)(2), a court must accept as true all allegations of jurisdictional fact made by plaintiff and resolve all factual disputes in plaintiff's favor. *Traynor v. Liu,* 495 F. Supp. 2d 444, 448 (D. Del. 2007). Once a jurisdictional defense has been raised, plaintiff bears the burden of establishing, with reasonable particularity, that sufficient minimum contacts have occurred between defendant and the forum to support jurisdiction. *See Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n,* 819 F.2d 434, 437 (3d Cir. 1987). To meet this burden, plaintiff must produce "sworn affidavits or other competent evidence," since a Rule 12(b)(2) motion "requires resolution of factual issues outside the pleadings." *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 67 n.9 (3d Cir. 1984).[4]

### B. Venue

Rule 12(b)(3) provides that a motion to dismiss may be made on the basis of improper venue. Fed.R.Civ.P. 12(b)(3). The purpose of venue, in most instances, "is to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Cottman Transmission Systems, Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994). Title 28, § 1391(b) provides that a

> [c]ivil action ... may ... be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject

---

[4] The Supreme Court of Delaware has recently ruled that without additional contacts in Delaware, foreign corporations that register to do business in Delaware are not subject to general jurisdiction. *Genuine Parts Co. v. Cepec*, Civ. No. 528, 2015, 2016 WL 1569077, at *12 (Del. Apr. 18, 2016). While plaintiff in the instant case is a corporation registered in Delaware, no defendants are registered to do business in Delaware.

4

of the action is situated; or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).

When analyzing whether venue is proper under § 1391(b)(2), the "statutory language ... favors the defendant ... by requiring that events or omissions supporting a claim be 'substantial.'" *Cottman*, 36 F.3d at 294. It is not enough that events or omissions have "some tangential connection with the dispute in litigation." *Id.* The substantiality requirement is "intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute." *Id.*

### C. *Forum Non Conveniens*

"The common-law doctrine of *forum non conveniens* 'has continuing application [in federal courts] only in cases where the alternative forum is abroad.'" *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422 (2007) (quoting *American Dredging*, 510 U.S. 443, 449 (1994)). When the most appropriate forum is abroad, "no mechanism provides for transfer between the courts of different sovereigns" and, therefore, "dismissal under *forum non conveniens* remains the appropriate remedy." 14D Charles Alan Wright et al., *Federal Practice and Procedure* § 3828 (4th ed.); *see also* 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."). To dismiss a claim under the doctrine of *forum non conveniens*, the party seeking dismissal of a claim must establish the existence of an adequate alternative forum. *Lacey v.*

5

*Cessna Aircraft Co.*, 932 F.2d 170, 178-80 (3d Cir. 1991) (*"Lacey II"*). After the moving

party demonstrates that an alternative forum is present, "the district court must then

determine the appropriate amount of deference to be given [to] the plaintiff's choice of

forum." *Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183, 190 (3d Cir. 2008).

Normally, "a plaintiff's choice of forum should rarely be disturbed." *Piper Aircraft Co. v.*

*Reyno*, 454 U.S. 235, 241 (1981). Yet a court may dismiss a case if the forum "would

'establish ... oppressiveness and vexation to a defendant ... out of all proportion to

plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of

considerations affecting the court's own administrative and legal problems.'" *Id.*

(quoting *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518 (1947)). Additionally, a

foreign plaintiff's choice of forum is given less deference when it litigates outside its

home forum. *Piper*, 454 U.S. at 256. After considering these initial matters, "the district

court must balance the relevant public and private interest factors." *Id.* The private

interest factors consist of the

> relative ease of access to sources of proof; availability of compulsory
> process for attendance of unwilling, and the cost of obtaining attendance
> of willing, witnesses; possibility of view of premises, if view would be
> appropriate to the action; and all other practical problems that make a trial
> of a case easy, expeditious and inexpensive

*Lacey II*, 932 F.2d at 180 (quoting *Piper*, 454 U.S. at 241, n.6). The public

interest factors consist of

> the administrative difficulties flowing from court congestion; the "local
> interest in having localized controversies decided at home;" the interest in
> having the trial of a diversity case in a forum that is at home with the law
> that must govern the action; the avoidance of unnecessary problems in
> conflict of laws, or in application of foreign laws..

*Lacey II*, 932 F.2d at 180 (quoting *Piper*, 454 U.S. at 241, n.6).

6

## IV. DISCUSSION

### A. Personal Jurisdiction

#### 1. Mizrahi

Plaintiff contends that as a nonresident director of a Delaware corporation, jurisdiction over defendant Mizrahi is permissible under 10 Del. C. §3114(b), Delaware's officer consent statute. (D.I. 11 at 8) The Delaware Supreme Court has held that § 3114 provides a statutory basis for personal jurisdiction over directors of corporations in Delaware in "all civil actions or proceedings brought in this State, by or on behalf of, or against such corporation, in which such officer is a necessary or proper party; or (ii) any action or proceeding against such officer for violation of a duty in such capacity." *Hazout v. Tsang Mun Ting*, 134 A.3d 274, 277 (Del. 2016).[5]

When the transactions in dispute took place, Mizrahi was a director of My Size, and plaintiff brought this action to allege violations of fiduciary duty in his capacity as a director. (D.I. 11 at 8) Accepting plaintiff's allegations as true, this court has personal jurisdiction under Delaware law over Mizrahi due to his obligations as a director of a company incorporated in Delaware, even though he is a non-Delaware resident.[6]

#### 2. Remaining defendants

Plaintiff links Mizrahi with the remaining defendants as part of a conspiracy to defraud the company. (*Id.* at 11) In support, plaintiff relies on the five factor test to

---

[5] The Delaware Supreme Court has also held that the statute is consistent with the constitutional principles of due process and meets the required minimum contacts test. *Hazout*, 134 A.3d at 278 (Del. 2016).

[6] Although the dealings in dispute in *Hazout* were negotiated under Delaware law, compared to Israeli law in this case, Mizrahi is still subject to personal jurisdiction in Delaware under the *Hazout* court's interpretation of the provision. *Hazout*, 134 A.3d 274.

determine conspiracy jurisdiction in *Istituto Bancario Italiano SpA v. Hunter Eng'g Co.*,

449 A.2d 210 (Del. 1982), wherein the Delaware Supreme Court held:

> [A] conspirator who is absent from the forum state is subject to the
> jurisdiction of the court, assuming he is properly served under state law, if
> the plaintiff can make a factual showing that:
>    (1) a conspiracy to defraud existed;
>    (2) the defendant was a member of that conspiracy;
>    (3) a substantial act or substantial effect in furtherance of the
> conspiracy occurred in the forum state;
>    (4) the defendant knew or had reason to know of the act in the
> forum state or that acts outside the forum state would have an effect in the
> forum state; and
>    (5) the act in, or effect on, the forum state was a direct and
> foreseeable result of the conduct in furtherance of the conspiracy

*Id.* at 225. The Delaware Supreme Court has held that the test should be narrowly

construed and that the application "requires factual proof of each enumerated element."

*Werner v. Miller Tech. Mgmt., L.P.*, 831 A.2d 318, 330 (Del. Ch. 2003); s*ee also Hartsel*

*v. Vanguard Grp.*, Inc., 2011 WL 2421003, at *10 (Del. Ch. 2011) *aff'd*, 38 A.3d 1254

(Del. 2012).

Accepting plaintiff's allegations as true, it appears the first two factors are met.

While plaintiff contends that the alleged tortious actions involve a substantial act

occurring in Delaware, plaintiff provides no explanation that Mizrahi or the remaining

defendants took any action in Delaware. (D.I. 12 at 6) In this regard, plaintiff argues

that, because the shares were from a Delaware corporation, the Israeli actions caused

substantial effect in Delaware, to wit, the decrease in value of the shares. My Size,

however, is exclusively traded on the Tel Aviv stock market and all damages plaintiff

seeks occurred from actions in Israel. (*Id.* at 2-7) Plaintiff makes no claims as to the

validity of the shares and has not submitted any relevant factual evidence of the

required "effect" in Delaware. *Istituto Bancario*, 449 A.2d at 225. Therefore, plaintiff

8

has not demonstrated that the third prong of the *Instituto Bancario* test is met and cannot use a conspiracy theory to link the remaining defendants to Mizrahi's actions.

### B. In Rem Jurisdiction

Plaintiff also alleges the court can exercise in rem jurisdiction over the remaining defendants due to their ownership of stock in a Delaware corporation. (D.I. 11 at 9) Specifically, plaintiff alleges that because the subject matter of the action at bar is the legal existence of stock, ownership of this stock is enough to confer jurisdiction. (*Id.*) Plaintiff's claims in this action consist of fraud and breach of contract. While plaintiff does seek equitable rescission of the shares, it does so "as an equitable remedy for fraud, personal to the plaintiff, not by reason of some alleged defect in the corporate process by which the warrants were authorized or the stock issued." *Hart Holding Co. Inc. v. Drexel Burnham Lambert Inc.*, Civ. No. 11514, 1992 WL 127567, at *7 (Del. Ch. May 28, 1992). The Delaware Chancery Court has held that merely owning the stock is not enough to "satisfy the constitutional test of minimum standards." *Id.* Plaintiff cannot use in rem jurisdiction to reach the other defendants.

### C. Venue

The court has exclusive personal jurisdiction over defendant Mizrahi. For the purposes of venue, " if there is no district in which an action may otherwise be brought as provided by this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such" is a proper venue. 28 U.S.C. 1391(b)(3). Because personal jurisdiction is proper over defendant Mizrahi, venue in Delaware is also proper.

### D. Forum Selection Clause

The Third Circuit has found that a forum selection clause is

> [p]rima facie valid and should be enforced unless enforcement is found to
> be unreasonable under the circumstances.  A forum selection clause is
> "unreasonable" where the defendant can make a "strong showing" either
> that the forum thus selected is "so gravely difficult and inconvenient that
> he will for all practical purposes be deprived of his day in court" or that the
> clause was procured through "fraud or overreaching."

*Foster v. Chesapeake Ins. Co.* 933 F.2d 1207 (3d Cir. 1991) (citing *Bremen v. Zapata*

*Off–Shore Co.*, 407 U.S. 1, 15–16 (1972)).  The Third Circuit has further discussed

forum selection clauses as follows:

> [A] forum selection clause is presumptively valid and will be enforced by
> the forum unless the party objecting to its enforcement establishes (1) that
> it is the result of fraud or overreaching, (2) that enforcement would violate
> a strong public policy of the forum, or (3) that enforcement would in the
> particular circumstances of the case result in litigation in a jurisdiction so
> seriously inconvenient as to be unreasonable.

*Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F. 2d 190, 202 (3d Cir. 1983)

(overruled on other grounds by *Lauro Lines v. Chasser*, 490 U.S. 495 (1989)).

Delaware courts interpret a forum selection clause "in accordance with the law chosen

to govern the contract." *Ashall Homes Ltd. v. ROK Entm't Grp. Inc.*, 992 A.2d 1239,

1245 (Del. Ch. 2010).

While the parties agree that the forum selection clause in the Contract is valid,

the parties disagree if it should be enforced under the controlling Israeli law.[7]  Plaintiff

contends that under a verbatim translation, the forum selection clause is permissive

rather than mandatory.  (D.I. 11 at 14)  Plaintiff argues that, under Israeli law,

---

[7] The forum selection clause contains both a choice of law provision and a choice of
forum provision.  Although both are preceded by the exact same clause of the Contract,
plaintiff contends that the choice of law clause is mandatory, but alleges that the choice
of forum clause is permissive.  (D.I. 11 at 14)

enforceable forum selection clauses require unequivocal language indicating that jurisdiction is mandatory and such language is not present in the Contract. (D.I. 7 at 3) In support, plaintiff relies on Israeli case law and a declaration from an Israeli lawyer. (D.I. 11 at 14) Defendants allege the opposite, similarly relying on Israeli case law and a declaration by a lawyer licensed to practice in Israel. (D.I. 12 at 7) The court declines to make a determination on the merits of the forum selection clause at this time because, as discussed below, the doctrine of *forum non conveniens* requires the case to be dismissed.

### E. *Forum Non Conveniens*

Defendants move for dismissal under the doctrine of *forum non conveniens*. (D.I. 7 at 12) As a threshold matter, the court must determine if plaintiff could have originally brought this case in the District of Tel Aviv-Jaffa in Israel. *See Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 44 (3d Cir. 1988) ("*Lacey I*"). As noted, a case involving similar claims is already proceeding to trial in Israel, so this factor is met.[8]

The court must then consider plaintiff's choice of forum which "should rarely be disturbed, unless the balance of factors is strongly in favor of the defendant." *Lacey I*, 862 F.2d at 43; *see also Windt*, 529 F.3d at 190 ("Ordinarily, a strong presumption of convenience exists in favor of a domestic plaintiff's chosen forum, and this presumption may be overcome only when the balance of the public and private interests clearly favors an alternate forum."). Because this factor is a strong presumption in plaintiff's

---

[8] Defendants filed the Israeli case on September 8, 2015, at 1:08 Israeli time (7:08 A.M. EDT) and plaintiff filed the instant suit on September 9, 2015, at 4:07 P.M. EDT. Although defendants were technically the first to file by a matter of hours, plaintiff contends that the suits should be considered contemporaneously filed. The point is moot, as other factors weigh in defendants' favor.

11

favor, defendants must demonstrate that the other factors strongly favor a transfer to Israel as "[i]t is settled that the defendant bears the burden of persuasion as to all elements of the *forum non conveniens* analysis." *Id.* at 43-44.

The court now turns to an examination of the *Piper* factors to determine if a transfer is warranted. *Piper*, 454 U.S. at 241, n.6. Overall, both parties would be greatly inconvenienced by a trial in Delaware. While plaintiff is incorporated in Delaware (technically its home forum), plaintiff's CEO and all remaining defendants reside in Israel, easily accessible as witnesses by the district court in Tel Aviv. (D.I. 7 at 9) Taking depositions and forcing the parties to travel to Delaware for trial would present a substantial burden for defendants. There is a significant difference between time zones and many of the documents used as evidence are written in Hebrew.[9] (D.I. 6 at 14) The fact that nearly all defendants reside in Israel and not in Delaware is a "practical problem" that the doctrine of *forum non conveniens* is intended to prevent. *Lacey II*, 932 F.2d at 178-80. While there is a local interest in deciding cases where a party is incorporated in Delaware, the controversy in this case is not local as all of the transactions were negotiated and performed in Israel. (D.I. 6 at 3) Further, while the shares in dispute are from a company incorporated in Delaware, they are traded exclusively on the Tel Aviv stock exchange. (*Id.*)

Plaintiff asks the court to apply Israeli law in a diversity case. The Third Circuit has held that applying foreign law is not by itself grounds for dismissal. *See Hoffman v.*

---

[9] Plaintiff contends that many of the documents are already in English and translating the relevant documents is not a substantial burden. (D.I. 11 at 17) However, this is contradicted by plaintiff's own exhibit which contains a Contract written in Hebrew and by the differing translations of the forum selection clause contained in the Contract. (D.I. 11, ex. A)

12

*Goberman*, 420 F.2d 423, 426 (3d Cir. 1970) ("It is settled that the mere fact that the court is called upon to determine and apply foreign law does not present a legal problem of the sort which would justify the dismissal of a case otherwise properly before the court."). However, in a case where there is "such oppression and vexation of a defendant as to be out of all proportion to the plaintiff's convenience," transfer for *forum non conveniens* is appropriate. *Id.* Here, the burden of litigating in Delaware (including requiring experts or translators to interpret Israeli law) disproportionately burdens defendants. [10] Apart from contending that its choice of forum should be respected, plaintiff has not demonstrated any burden that would result from trying this case in Israel.

## VIII. CONCLUSION

For the reasons stated above, defendants' motion to dismiss (D.I. 6) is granted. An appropriate order shall issue.

---

[10] As defendants note, the difference in opinion between two Israeli attorneys regarding the importance of forum selection clauses under Israeli law demonstrates the difficulties of applying Israeli law in this court.